13 P.3d 955 (2000)
Joseph Lee PROFERES, Appellant,
v.
The STATE of Nevada, Respondent.
No. 33729.
Supreme Court of Nevada.
December 5, 2000.
*956 Frederick B. Lee, Jr., Public Defender, Elko County, for Appellant.
Frankie Sue Del Papa, Attorney General, Carson City; Gary D. Woodbury, District Attorney, and Robert J. Lowe, Deputy District Attorney, Elko County, for Respondent.
BEFORE THE COURT EN BANC.

OPINION
LEAVITT, J.
Appellant Joseph Lee Proferes appeals from the judgment entered upon his conviction for possession of a controlled substance for the purpose of sale. He challenges an adverse determination of the district court on his pretrial motion to suppress evidence. We reverse and remand.

FACTS
Elko City SWAT team officers were in the process of executing a search warrant inside a residence when appellant and a companion knocked on the door.[1] The officers answered the door and directed appellant and his companion to enter the house. The companion complied, but appellant turned and ran. The officers tackled him in the front yard, handcuffed him, and took him inside the house.
After returning to the house, as one of the officers was performing a pat down search of appellant, another officer asked appellant if he had any weapons, guns, or controlled substances on his person. Appellant said, "Yes." As he replied, he gestured toward his coat pocket. The officer reached inside and removed a package containing methamphetamine.
Appellant filed a motion to suppress both his statement made in response to the police questioning and the methamphetamine. He claimed that he was illegally detained after he knocked on the door, and that after the officers placed him in custody he was not given Miranda[2] warnings. The district court held a suppression hearing and denied the motion. Appellant entered into a plea bargain whereupon he pleaded guilty to one count of possession of a controlled substance for the purpose of sale, reserving the right, pursuant to NRS 174.035(5),[3] to seek this court's review of the district court's order denying the motion to suppress evidence.
At the hearing on the suppression motion, an officer testified that the procedure and practice of the Elko police officers while executing a search warrant on a residence for controlled substances is to apprehend any person who knocks on a door, handcuff the person, and conduct a pat down search. The person's identity is verified, the officers interrogate him or her concerning any knowledge of controlled substances in the residence, and a check is made to determine if the person has any outstanding warrants. If one does not step into the residence voluntarily, an officer uses reasonable force to bring him or her physically into the residence.

DISCUSSION
The district court's findings in a suppression hearing will be upheld unless this court is ""`left with the definite and firm conviction that a mistake has been committed.'"" State v. Harnisch, 113 Nev. 214, 219, 931 P.2d 1359, 1363 (1997) (quoting United States v. Traynor, 990 F.2d 1153, 1157 (9th Cir. 1993) (quoting United States v. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948))). "`[F]indings of fact in a suppression hearing will not be disturbed on appeal if supported by substantial evidence.'" Id. *957 (quoting State v. Miller, 110 Nev. 690, 694, 877 P.2d 1044, 1047 (1994)).

Suspicion necessary for detention
A police officer may stop and detain a suspect for questioning regarding possible criminal behavior. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, detention must be made only when the officer has a "reasonable, articulable suspicion" that the person is engaged or is about to engage in criminal activity. Id. at 27. There must be some objective information to support a reasonable suspicion connecting the person to criminal activity. Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).
In United States v. Rembert, 838 F.Supp. 1336, 1338 (D.Minn.1993), a search was conducted in an apartment pursuant to a search warrant, when the defendant knocked on the door. A police officer answered the door and grabbed the defendant when he asked for "Black," the name of the person selling crack cocaine out of the apartment. See id. The officer performed a pat down search and recovered a loaded gun and drugs. See id. The defendant subsequently moved to suppress the evidence, and the court held that the gun and drugs were fruits of an illegal search because the officer did not have a reasonable suspicion to justify a detention of the defendant. See id. at 1341; see also United States v. Clay, 640 F.2d 157, 162 (8th Cir.1981) (holding that where the defendant walked up to a house where a search warrant was being executed, knocked on the door and was detained and frisked by the police that "[t]he initial frisk of appellant was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which the Supreme Court has invariably held must form the predicate to a pat down search of a person for weapons").
The practice and procedure of seizing and searching anyone who knocks on a door during the execution of a search warrant on a residence violates the Fourth Amendment. Any evidence recovered must be suppressed unless the police officers have a reasonable suspicion based on objective information that the person knocking on the door "has committed, is committing or is about to commit a crime." NRS 171.123(1). Here, the officers had nothing more than a "hunch" that appellant was engaged in any criminal activity or was armed and dangerous. Before appellant knocked on the door of the residence and refused to step in, there was no evidence linking him to any criminal act, let alone the "reasonable articulable suspicion" of criminal activity required by Terry.
The State contends it is common knowledge that the controlled substance industry relies heavily upon firearms. Police officers who fight this menace should not have to second guess themselves regarding their own safety. See United States v. McMurray, 34 F.3d 1405, 1410 (8th Cir.1994).
In McMurray, the appellate court held the police officers had a reasonable suspicion that McMurray was dealing drugs and was armed and dangerous prior to the detention and seizure. See id. The police were informed by a hotel employee of the actions of the occupants in a room whose behavior matched that of drug dealers. See id. at 1409. After a period of surveillance, the officers knocked on the door. See id. McMurray was captured, and a pat down search revealed drugs on his person. See id. at 1409-10. The court ruled the search was justified because the officers had a reasonable articulable suspicion that he was involved in criminal activity based on the hotel employee's tip and the surveillance. See id. at 1410.
Unlike McMurray, the officers in this case did not have an informer's tip as to Proferes' behavior and performed no surveillance before detaining him. Instead, the officers testified that the procedure in such cases was to routinely ask anyone who came to the door to enter the house, handcuff them and conduct a pat down search. If they refused to enter voluntarily, reasonable force was applied to force entry. Under this policy, anyone, however innocent, who happened to knock on a door during the execution of a search warrant, would be subjected to seizure and search.
The seizure of Proferes was based solely on his mere presence at a location where *958 police were conducting a search warrant and as such, violated his right to be free from unreasonable seizures under the Fourth Amendment. See Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (citing Sibron v. New York, 392 U.S. 40, 62-63, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)).

Violation of Miranda rights
After his capture, appellant was brought to the residence, handcuffed, and an officer began a pat down search. Appellant had not been advised of his Miranda rights when another officer asked him if he had any weapons, guns, or controlled substances on his person. He answered, "Yes," and indicated toward his coat pocket. From the pocket, the officer removed a packet containing methamphetamine.
In State v. Hall, 253 N.J.Super. 84, 600 A.2d 1248, 1249-50 (1990), the defendant was directed to enter a residence during the execution of a search warrant. The New Jersey court ruled the defendant was entitled to Miranda warnings before he was asked whether he had anything on his person. See id. at 1250. Thus, the defendant's statement regarding possession of cocaine and the cocaine itself was suppressed. See id. at 1254. It is a well established general rule that a defendant's non-Mirandized inculpatory statement is inadmissible at trial. See United States v. Polanco, 93 F.3d 555 (9th Cir. 1996).
Under the totality of the circumstances in this case, Proferes' statement to the police and the methamphetamine seized must be suppressed. Proferes was in custody, handcuffed, and not free to leave. As such, the question put to him by law enforcement concerning whether he had drugs in his possession constituted a non-Mirandized custodial interrogation. The discovery of the drugs resulted from the illegal questioning.

Inevitable discovery rule
The State argues that the inevitable discovery rule applies in this case because the police check everybody that arrives at a residence where a search warrant is being executed for outstanding warrants and they would have discovered an outstanding warrant for Proferes. As a result, he would have been arrested and the methamphetamine would have been inevitably discovered when he was booked into jail.
The inevitable discovery doctrine states that "evidence obtained in violation of the Constitution could still be admitted at trial if the government could prove by a `preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" United States v. Lang, 149 F.3d 1044 (9th Cir.1998), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999) (quoting Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). The Supreme Court also explained that "[t]he inevitable discovery doctrine, with its distinct requirements, is in reality an extrapolation from the independent source doctrine: Since the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." Murray v. United States, 487 U.S. 533, 539, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).
In Hall, the New Jersey Superior Court observed:
The violation of defendant's Miranda rights requires suppression of the cocaine as well as the statement, unless the State proves by clear and convincing evidence that the cocaine would inevitably have been discovered by valid means.
The inevitable discovery rule would apply if this Court found by clear and convincing evidence that (1) proper police procedures were or would have been pursued with respect to Dexter Hall; (2) such procedures would inevitably have uncovered the CDS[4] on the bill in his pocket; and (3) the discovery would have been wholly independent of the defendant's unwarned response to the detective's question. For the reasons set forth in Section V. below, the State has not proved that the CDS was or inevitably would have been discovered.
. . . .

*959 The police had no valid reason for the pat-down, nor for a search of defendant. The CDS that he had in his pocket must be suppressed both because of the Fourth Amendment violation and the Miranda violation.
Hall, 600 A.2d at 1251-52, 1254 (citations omitted) (footnote added).
Proper police procedures were not pursued in appellant's case because the officers lacked any reasonable suspicion that Proferes was involved in any criminal activity, and the discovery of the controlled substance would not have been made independent of the seizure and Proferes' unwarned response to the officer's question. If the officers had not illegally seized Proferes, they would not have inevitably discovered the contraband.

CONCLUSION
We have reviewed the district court's order denying the motion to dismiss pursuant to NRS 174.035(3) and for the reasons stated above conclude the district court erred. We reverse and remand this case to the district court to allow the defendant to withdraw his plea of guilty and for further proceedings consistent with this opinion.
ROSE, C.J., YOUNG, SHEARING, AGOSTI and BECKER, JJ., concur.
MAUPIN, J., concurring.
I agree that the evidence in this case should be suppressed for the reasons stated by Leavitt, J., in his majority opinion. I write separately to note that the detention in this case, having been illegally effected, was entirely different from that described in State v. Lisenbee, 116 Nev. Adv. Op.___, 13 P.3d 947 (2000) (Maupin, J., concurring). I further note that whether Proferes' resistance to the detention was itself legal or illegal, see Batson v. State, 113 Nev. 669, 676 n. 3, 941 P.2d 478, 480 n. 3 (1997), is not determinative of whether the fruits of the improper detention and interrogation should be suppressed.
NOTES
[1] Appellant testified that he went to the residence to get a spare set of keys to his pickup truck.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] NRS 174.035(3) provides in pertinent part as follows:

With the consent of the court and the district attorney, a defendant may enter a conditional plea of guilty ... reserving in writing the right, on appeal from the judgment, to a review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal must be allowed to withdraw the plea.
[4] CDS is cocaine.