RUBEN CAMACHO, Appellant, v. THE STATE OF
NEVADA, Respondent.

No. 39765

August 29, 2003                                    75 P.3d 370

[Rehearing denied October 23, 2003]

[En banc reconsideration denied December 17, 2003]

*Dennis A. Cameron,* Reno, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

Before ROSE, MAUPIN and GIBBONS, JJ.

## OPINION

By the Court, ROSE, J.:

This is an appeal from a district court's judgment of conviction and sentence following appellant Ruben Camacho's guilty plea.[1] Camacho argues on appeal that the district court erred by denying his motion to suppress evidence seized from his vehicle following his arrest. Specifically, he asserts that neither the search incident to arrest nor the inevitable discovery exceptions excuses the police's warrantless search of his vehicle. We disagree and affirm Camacho's conviction. The district court correctly denied Camacho's motion to suppress since police would have discovered the evidence in a later inventory search of Camacho's vehicle, and thus, the inevitable discovery exception applied.

### FACTUAL HISTORY

The facts of this case are uncontested. From April 26, 2001, through May 16, 2001, police conducted three undercover methamphetamine purchases from Camacho using a confidential informant.[2] In each of the drug deals, the informant or police officers paged Camacho and left a telephone number. Each time, Camacho called the number and negotiated with the informant the purchase price and amount of drugs. Thereafter, the informant met

---

[1]See NRS 177.015; NRS 174.035.

[2]The drug purchases occurred on April 26, May 2, and May 16, 2001.

Camacho in a public place and exchanged money for the drugs. On at least two of the drug purchases, Camacho arrived in his own vehicle with the drugs in his possession.

On May 17, 2001, police, through the informant, arranged to purchase one pound of methamphetamine from Camacho at a Wal-Mart parking lot in Reno. Police planned to arrest Camacho as soon as he entered the parking lot, to search and seize his vehicle, and institute forfeiture proceedings against the vehicle. Police did not seek or obtain a search warrant for the vehicle.

Camacho entered the parking lot in his vehicle at approximately 10:30 p.m. on May 17, 2001. He was alone. As planned, two marked police units stopped Camacho's vehicle as he pulled into a marked parking space for Wal-Mart customers. Police removed him from his vehicle, handcuffed him, and escorted him away from the car.[3]

A few minutes later, Detective Timothy Kuzanek briefly searched the "immediate area" of Camacho's vehicle without Camacho's consent. Detective Kuzanek recovered a white plastic grocery bag beneath the driver's seat containing three smaller plastic bags filled with an off-white, rocky, powdery substance. Later tests revealed the substance to be methamphetamine. Following the search, police placed Camacho into a police vehicle and transported him to jail. Police also seized Camacho's vehicle as planned and towed it away.

The next day, pursuant to department policy, Detective Richard Ayala conducted an inventory search. Detective Ayala did not find any contraband in his search, but he included all of the items found in the vehicle on an inventory search form.

## PROCEDURAL HISTORY

Camacho waived his preliminary hearing and was bound over to answer in the district court on four felony charges of trafficking in a controlled substance: three violations of NRS 453.3385(2) and one violation of NRS 453.3385(3). In the district court, Camacho filed a motion to suppress the drugs seized from his car, which formed the basis for count four of the information, the violation of NRS 453.3385(3).

In his motion, Camacho argued that a warrantless search of an automobile is justified in Nevada only when (1) police have probable cause to believe the automobile contains contraband, and (2) exigent circumstances exist to justify the search.

The State asserted that four separate exceptions to the warrant requirement obviated the need for a warrant: (1) the automobile exception since there was probable cause to believe contraband was in Camacho's vehicle and exigent circumstances existed; (2) the search incident to arrest exception, based upon *New York v. Bel-*

---

[3]Camacho does not contest there was probable cause for his arrest.

*ton;*[4] (3) the inventory search exception;[5] and (4) the inevitable discovery exception, since pursuant to the seizure of the vehicle for forfeiture, it would have been impounded and subsequently searched.

On December 3, 2001, the district court held a hearing on Camacho's motion and heard testimony from several police officers, as well as argument by counsel. Following the hearing, the district court made several findings of fact: (1) police had probable cause to arrest Camacho on May 17, 2001; (2) prior to the arrest, police could have obtained either an anticipatory search warrant or a search warrant for Camacho's vehicle; and (3) police intended to seize the vehicle for forfeiture when they arrested Camacho, based upon Camacho's prior drug deals with the informant.

On the State's arguments, the district court concluded that: (1) the automobile exception did not apply because there were no exigent circumstances which would excuse the police's failure to obtain a search warrant;[6] (2) relying upon *Belton,* the State proved by clear and convincing evidence that the police's search was properly conducted incident to a lawful custodial arrest;[7] (3) the State proved by clear and convincing evidence that because the vehicle was to be seized and inventoried, the contraband would have been inevitably discovered, albeit the next day; and (4) the State proved by a preponderance of the evidence that the inevitable discovery doctrine applied. The district court denied Camacho's motion to suppress on the latter three grounds.

· Following the suppression hearing, Camacho entered a negotiated plea to three counts of trafficking in a controlled substance.[8] He reserved his right to appellate review of the district court's rulings on his motion to suppress, which dealt only with count four of the information.

The district court accepted the guilty plea and sentenced Camacho to concurrent maximum prison terms of 84 months with minimum parole eligibility of 24 months for the first two counts and a consecutive maximum prison term of 300 months with a mini-

---

[4]453 U.S. 454 (1981).

[5]The State argued this exception applied because police prepared an inventory, the search was pursuant to police policy, and no evidence supported a conclusion that the police searched the car simply to circumvent Camacho's rights.

[6]The State has not argued on appeal that the district court erred in concluding that the automobile exception does not apply to this case.

[7]The district court concluded that the dicta in *State v. Greenwald,* 109 Nev. 808, 858 P.2d 36 (1993), stating that the justification for a search incident to arrest evaporates when an arrestee is in handcuffs and away from the place searched, was not controlling. The district court also concluded that because this court has never explicitly rejected *Belton*'s search warrant exception, *Belton* controlled and established a permissible exception to the warrant requirement.

[8]Camacho pleaded guilty to two counts of violating NRS 453.3385(2) and one count of violating NRS 453.3385(3).

mum parole eligibility of 120 months for the third count. Additionally, the court directed Camacho to submit to DNA analysis testing and ordered him to pay: (1) a $2,000 fine; (2) a $25 administrative assessment fee; (3) a $60 chemical analysis fee; and (4) a $150 DNA testing fee. Camacho appeals his conviction, arguing that the district court erred in denying the motion to suppress the drugs discovered in Camacho's vehicle.

## DISCUSSION

The Fourth Amendment to the United States Constitution and the Nevada Constitution proscribe all unreasonable searches and seizures.[9] " 'Warrantless searches "are *per se* unreasonable under the Fourth Amendment subject only to a few specifically established and well delineated exceptions." ' "[10] "Suppression issues present mixed questions of law and fact. While this court reviews the legal questions de novo, it reviews the district court's factual determinations for sufficient evidence."[11]

On appeal, Camacho contends that the district court erred when it concluded that: (1) the search incident to arrest exception applied pursuant to *Belton*; and (2) the inevitable discovery exception applied because his vehicle was subject to forfeiture, and therefore, the drugs would have been discovered during an inventory search.

*Search incident to arrest*

Camacho contends that the search incident to arrest exception did not excuse the police's failure to obtain a search warrant to search his vehicle. Specifically, he argues that because police removed him from his vehicle several minutes before the search and he was handcuffed and disarmed, he could neither destroy nor conceal evidence and police could not rely on the search incident to arrest exception. The State contends that *Belton* authorized the police's contemporaneous search of Camacho's vehicle.

We agree with Camacho and elect to follow our previous cases where we rejected *Belton*'s reasoning[12] and followed the earlier

---

[9]U.S. Const. amend. IV; Nev. Const. art. 1, § 18; *McMorran v. State,* 118 Nev. 379, 382, 46 P.3d 81, 83 (2002).

[10]*Hughes v. State,* 116 Nev. 975, 979, 12 P.3d 948, 951 (2000) (quoting *Barrios-Lomeli v. State,* 113 Nev. 952, 957, 944 P.2d 791, 793 (1997) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967))).

[11]*Johnson v. State,* 118 Nev. 787, 794, 59 P.3d 450, 455 (2002).

[12]*See, e.g., State v. Harnisch,* 113 Nev. 214, 223, 931 P.2d 1359, 1365-66 (1997) (*Harnisch I*) (stating that search incident to arrest exception evolves from need to disarm and prevent destruction of evidence and, thus, does not apply where person in custody and removed from vehicle); *Greenwald,* 109 Nev. at 809-10, 858 P.2d at 37 (same).

United States Supreme Court case of *Chimel v. California.*[13] We now conclude that, under the Nevada Constitution, there must exist both probable cause and exigent circumstances for police to conduct a warrantless search of an automobile incident to a lawful custodial arrest.

In light of our prior decisions holding that under the Nevada Constitution police may not conduct a warrantless search of a vehicle, even if police may have probable cause to believe that contraband is located therein, absent exigent circumstances,[14] it would be inconsistent to now hold that police may, without a warrant, search a vehicle incident to a lawful custodial arrest without exigent circumstances. Police might even be tempted to arrest a person simply to conduct a warrantless search of that person's vehicle. The legislature has provided an expedited procedure whereby police may obtain a warrant telephonically.[15] In situations where no exigent circumstances exist, it is certainly reasonable to require that police obtain a warrant prior to searching a vehicle. We have defined exigent circumstances as " " " "those circumstances that would cause a reasonable person to believe that entry (or other relevant prompt action) was necessary to prevent physical harm to the officers and other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." " " "[16]

In the present case, the district court concluded that no exigent circumstances were present. We will not disturb a district court's findings of fact in a suppression hearing if they are supported by substantial evidence.[17] The record reveals that police removed Camacho from the vicinity of his car, arrested him, placed him in handcuffs, and intended to transport him to the police station for booking. Police then searched the car. It was extremely unlikely that when the search occurred, Camacho could have reached a weapon in his vehicle or destroyed or concealed evidence in his vehicle. Additionally, because police planned to seize Camacho's vehicle, it was equally unlikely that an unknown third person could have either removed the vehicle or removed evidence from within

---

[13]395 U.S. 752 (1969) (lawful custodial arrest justified contemporaneous warrantless search of arrestee and immediate area; justification for warrantless search based upon need to remove weapons from arrestee and prevent concealment or destruction of evidence, but that justification evaporates when police extend their search to other areas).

[14]*See, e.g., State v. Harnisch,* 114 Nev. 225, 227-29, 954 P.2d 1180, 1182-83 (1998) (*Harnisch II*) (while federal law does not require exigent circumstances for application of automobile exception, Nevada Constitution requires both probable cause and exigent circumstances).

[15]*See* NRS 179.045.

[16]*Howe v. State,* 112 Nev. 458, 466, 916 P.2d 153, 159 (1996) (quoting *Doleman v. State,* 107 Nev. 409, 414, 812 P.2d 1287, 1290 (1991) (quoting *United States v. McConney,* 728 F.2d 1195, 1199 (9th Cir. 1984))).

[17]*State v. McKellips,* 118 Nev. 465, 469, 49 P.3d 655, 658-59 (2002).

the vehicle. Thus, we conclude that while police certainly had probable cause to suspect that Camacho was carrying drugs in his vehicle when he was arrested, absent exigent circumstances, they were not permitted to search his vehicle incident to his arrest without a warrant.[18] Therefore, we conclude that the district court erred by applying the search incident to arrest exception to admit the evidence seized from Camacho's car. However, this conclusion does not end our analysis.

## Seizure and inevitable discovery

Camacho argues that NRS 179.1165 (the civil forfeiture statute) does not provide an exception to the warrant requirement. He further argues that because police knew from the time of the first undercover drug deal they would eventually seize his vehicle, they should have obtained a seizure warrant in the interim twenty-one days. Thus, the seizure of the vehicle was infirm since there were no exigent circumstances to excuse the failure to obtain a warrant. Because the initial seizure was invalid, argues Camacho, and therefore police would not have conducted an inventory of his car, the State could not rely upon the inevitable discovery rule to admit the evidence. The State contends that the seizure was proper because Camacho used his vehicle to traffic a controlled substance and the drugs would have inevitably been discovered in a later inventory search pursuant to established police policy.

NRS 179.1165(1) states that "property that is subject to forfeiture may only be seized by a law enforcement agency upon process issued by a magistrate having jurisdiction over the property." However, section two of that statute delineates several exceptions to the requirement of process. NRS 179.1165(2)(d) permits a seizure of property without process if the "law enforcement agency has probable cause to believe that the property is subject to forfeiture." And NRS 453.301(5) provides for the forfeiture of vehicles used to transport illegal substances.[19] Accordingly, in *A 1983 Volkswagen*

---

[18]We expressly limit the scope of this opinion to whether police may, without a warrant, search a vehicle incident to a lawful custodial arrest. This holding does not affect police's ability to search an arrestee's person incident to arrest; this area is obviously within the arrestee's control. *See, e.g., Carstairs v. State,* 94 Nev. 125, 575 P.2d 927 (1978); *Thomas v. Sheriff,* 85 Nev. 551, 459 P.2d 219 (1969); *Arabia v. State,* 82 Nev. 453, 421 P.2d 952 (1966).

[19]NRS 453.301(5) states in part:

The following are subject to forfeiture pursuant to NRS 179.1156 to 179.119, inclusive:

. . . .

5. All conveyances, including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, concealment, manufacture or protection, for the purpose of sale, possession for sale or receipt of property described in subsection 1 or 2.

*v. County of Washoe,*[20] this court examined NRS 453.306(2)(d) (the predecessor statute to NRS 179.1165(2)(d)) and concluded that the warrantless seizure of a vehicle was proper because police had probable cause to believe that the defendant used his vehicle to transport a controlled substance.

In the present case, police conducted a warrantless seizure of Camacho's vehicle because they had probable cause to believe that Camacho used the vehicle to transport illegal drugs. Police observed Camacho sell drugs to their informant three times. Camacho arrived in his vehicle with the drugs in the vehicle with him. Therefore, the conduct of the police fell within the language of NRS 179.1165(2)(d).

Additionally, police conducted a legitimate inventory search of Camacho's vehicle following its seizure. Police towed the vehicle from the Wal-Mart parking lot and conducted an inventory search the next day pursuant to police policy.[21]

The inevitable discovery rule provides that " 'evidence obtained in violation of the Constitution [can] still be admitted at trial if the government [can] prove by a "preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." ' "[22] In *Carlisle v. State,*[23] this court concluded that, even assuming an initial search of a vehicle was illegal, the evidence obtained from the search was nevertheless admissible under the inevitable discovery rule.[24] We reasoned that because police arranged to tow the vehicle from the place where they arrested the defendant, they would have been justified in conducting a later legitimate inventory search during which they would have found the same evidence.[25]

Here, if police did not recover the contraband in their initial search, they would have recovered it during their later inventory search. Thus, the drugs seized from Camacho's car would have been admissible under the inevitable discovery rule. Since police would have inevitably discovered the drugs when they performed

---

[20]101 Nev. 222, 699 P.2d 108 (1985).

[21]*See Weintraub v. State,* 110 Nev. 287, 288, 871 P.2d 339, 340 (1994) ("[I]nventory search must be carried out pursuant to standardized official department procedures and must be administered in good faith in order to pass constitutional muster.").

[22]*Proferes v. State,* 116 Nev. 1136, 1141, 13 P.3d 955, 958 (2000) (quoting *United States v. Lang,* 149 F.3d 1044, 1047 (9th Cir. 1998) (quoting *Nix v. Williams,* 467 U.S. 431, 444 (1984))).

[23]98 Nev. 128, 642 P.2d 596 (1982).

[24]*Id.* at 130, 642 P.2d at 598.

[25]*Id.*

an inventory search of Camacho's vehicle pursuant to established police policy following seizures, the district court did not err by admitting the evidence under this exception to the warrant requirement.

## CONCLUSION

We conclude that the district court erred by relying upon *Belton* to justify a warrantless search incident to arrest. Consistent with our prior decisions, we hold that the Nevada Constitution requires both probable cause and exigent circumstances to justify a warrantless search of an automobile incident to a lawful custodial arrest. However, the district court properly concluded that the evidence seized from the vehicle was admissible under the inevitable discovery exception to the warrant requirement. Therefore, we affirm Camacho's conviction and sentence.

GIBBONS, J., concurs.

MAUPIN, J., concurring in part and dissenting in part:

The majority correctly concludes under this court's *Harnisch* decisions[1] that the district court improperly applied *New York v. Belton*.[2] However, consistent with my dissent in *Barrios-Lomeli v. State*,[3] I would adopt *Belton* as the rule in Nevada and dispense with the exigent circumstances prong for warrantless searches of automobiles incident to lawful arrest. *Belton* provides a bright-line guidance for police conduct, simply that police may search the passenger compartment of a vehicle incident to a lawful custodial arrest. As the *Belton* Court noted:

> [T]he protection of the Fourth and Fourteenth Amendments "can only be realized if the police are acting under a set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement."[4]

Notwithstanding my belief that this court should adopt *Belton*, I reach the same result as the majority. The district court properly ruled that the evidence seized from Camacho's vehicle was admissible under the inevitable discovery doctrine.

---

[1] *State v. Harnisch*, 113 Nev. 214, 931 P.2d 1359 (1997), *clarified on rehearing*, 114 Nev. 225, 954 P.2d 1180 (1998).

[2] 453 U.S. 454 (1981).

[3] 113 Nev. 952, 959, 944 P.2d 791, 795 (1997) (MAUPIN, J., dissenting), *rehearing denied*, 114 Nev. 779, 961 P.2d 750 (1998).

[4] *Belton*, 453 U.S. at 458 (quoting Wayne R. LaFave, *"Case-By-Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma*, 1974 Sup. Ct. Rev. 127, 142).